UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL L. HOBBS, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>WELLS FARGO BANK, N.A., et al.,<br><br>Defendants. | No. 2:17-cv-01920 KJM CKD PS<br><br>FINDINGS AND RECOMMENDATIONS |

On December 13, 2017, the court held a hearing on defendants' motions to dismiss this action pursuant to Rule 12(b)(6). (ECF Nos. 6 & 7.) David Newman appeared telephonically for defendant Wells Fargo Bank; Kristina Pelletier appeared for defendants BSI Financial Services and Wilmington Savings Fund Society; and the pro se plaintiffs, who filed briefs opposing the motions, did not appear. At the close of the hearing, the court took the matter under submission. As not all parties have consented to magistrate judge jurisdiction, the undersigned issues the following findings and recommendations.

I. <u>Removal & Jurisdiction</u>

Plaintiffs commenced this action in the Sacramento Superior Court on July 12, 2017. They named four defendants: Wells Fargo Bank; Clear Recon Corp.; BSI Financial Services; and Wilmington Savings Fund Society (DBA Christiana Trust, as Trustee of the Brougham Fund I Trust). Plaintiffs allege violations of the California Homeowner's Bill of Rights, fraud, slander of

1

title, and other claims relating to the foreclosure sale of real property located at 2206 Stockman Circle in Folsom, California. (ECF No. 1 ("Compl.").) Along with damages, they seek an injunction barring defendants from foreclosing on the property during the pendency of this action. (Id., ¶¶ 48-59.)

On September 15, 2017, defendants removed this action to federal court on the basis of diversity, citing (1) plaintiffs' California citizenship; (2) BSI's citizenship in Delaware and Texas; (3) Wilmington's citizenship in Delaware; (4) Wells Fargo's citizenship in South Dakota; and (5) the fact that, on August 24, 2017, California corporation Clear Recon served and filed a Declaration of Non-Monetary Status ("DNMS") pursuant to California Civil Code § 29241 in the state court action.[1] (ECF No. 1 at 3-4 & Ex. 6.) In it, Clear Recon stated its belief that it has been named in this action "solely in its capacity as Trustee under [a] Deed of Trust, and not arising out of any wrongful acts or omissions on its part in the performance of its duties as trustee" and agreed to be bound by any court order regarding the Deed of Trust. (Id., Ex. 6.) No objection to the DNMS was filed within the statutory 15-day period, and the case was subsequently removed.

28 U.S.C. § 1332 authorizes district courts to exercise original jurisdiction in cases in which the amount in controversy exceeds the sum or value of $75,000.00 and the parties are citizens of different states. Diversity jurisdiction requires complete diversity, meaning every plaintiff must be diverse from every defendant. Id. "[A] federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy." Navarro Sav. Ass'n v. Lee, 446 U.S. 458, 461 (1980). A nominal defendant is one "who holds the subject matter of the litigation in a subordinate or possessory capacity as to which there is no dispute." SEC v. Colello, 139 F.3d 674, 676 (9th Cir. 1998) (internal quotation marks omitted).

California Civil Code § 2924l permits a trustee to file a DNMS if it is named in a state-court action "solely in its capacity as trustee, and not arising out of any wrongful acts or omissions on its part in the performance of its duties as trustee." Cal. Civ. Code § 29241(a). If a plaintiff does not object to the trustee's DNS within fifteen days of service, the trustee becomes a

---

[1] As to the amount in controversy, defendants cite the home loan for the real property at issue, which was originally for $375,000 and more recently had a higher balance. (ECF No. 1 at 4.)

2

nominal party in the action. Id. § 29241(d). If the case is then removed to federal court, the district court may treat the trustee as a nominal party and disregard its citizenship for diversity purposes. Moore v. Wells Fargo Bank, 2016 WL 3091087 (E.D. Cal. June 2, 2016). Here, trustee Clear Recon properly filed a DNMS in state court and, after waiting for any objections, defendants removed the action to federal court. Thus the court should treat DMNS as a nominal party whose California residency does not destroy diversity jurisdiction.

II. Procedural History

In January 2005, plaintiffs refinanced the real property located at 2206 Stockman Circle in Folsom, California by borrowing $375,000 from defendant Wells Fargo's predecessor-in-interest, World Savings Bank, FSB. (Compl., ¶ 17, Ex. A.)[2] The loan was modified in 2007 and a second time in 2009. (WF RJN, Exs. B & C.) The 2009 modification lowered the balance on the loan by more than $40,000 (10% of the loan balance) and lowered the monthly payment amount. (Id., Ex. C.)

Despite these modifications, plaintiffs had difficulty making their loan payments. In February 2016, Clear Recon Corp. (the substitute trustee under the deed of trust[3]) recorded a Notice of Default ("NOD"). (Compl., ¶ 21; WF RJN Ex. D.) The NOD indicates that payment was more than $12,000 behind as of February 2016. (Id.) It also contains a "Declaration of Compliance" indicating that Wells Fargo attempted to contact plaintiffs before Clear Recon recorded the NOD in order to discuss possible alternatives to foreclosure. (Id.) Plaintiffs allege in the complaint that Wells Fargo did not actually contact them to discuss alternatives before the NOD was recorded. (Compl., ¶¶ 24, 40-41, 45, 70-71.) Since plaintiffs did not cure their default, Clear Recon recorded a Notice of Trustee's Sale ("NOTS") in July 2016. (Id., ¶ 23, Ex. D.) The date of the sale was set for August 11, 2016. (Id.)

////

---

[2] World Savings Bank, FSB eventually merged into Wells Fargo Bank, N.A. (WF Request for Judicial Notice ("RJN"), Ex. A.)

[3] Clear Recon Corp. recorded a "Substitution of Trustee" on February 10, 2016. (Compl., ¶ 19, Ex. B.)

3

1    On August 10, 2016, the day before the scheduled foreclosure sale, plaintiffs filed for Chapter 13 bankruptcy in the Eastern District, Case No. 16-25253. (WF RJN, Ex. E.) As a result, the sale was postponed and, to date, no foreclosure sale has taken place. Plaintiffs did not file their claims against defendants in their bankruptcy schedules. (BSI RJN, Ex. 8.) On March 30, 2017, Wells Fargo filed a "Transfer of Claim" notice indicating that (1) ownership of the loan had been transferred to defendant Wilmington Savings Fund, and (2) the servicing of the loan had been transferred to defendant BSI. (WF RJN, Ex. H.) The bankruptcy proceeding ended on June 6, 2017.

On June 29, 2017, three weeks after the first bankruptcy proceeding ended, plaintiffs filed a second petition for Chapter 13 Bankruptcy in the Eastern District, Case No. 17-24273. (WF RJN, Ex. I.) Again, plaintiffs sought to stay the foreclosure sale of the property at issue. However, plaintiffs again failed to disclose their claims against defendants in their bankruptcy schedules. Plaintiffs commenced this action in the Sacramento Superior Court on July 12, 2017. On August 3, 2017, their second bankruptcy petition was dismissed.

III. Legal Standards

In order to survive dismissal for failure to state a claim pursuant to Rule 12(b)(6), a complaint must contain more than a "formulaic recitation of the elements of a cause of action"; it must contain factual allegations sufficient to "raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). "The pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." Id., quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

////

////

4

IV. Discussion

Defendants argue that, because plaintiffs failed to give notice of potential claims against them in their bankruptcy schedules, plaintiffs are judicially estopped from pursuing the instant claims against them.

The filing of a bankruptcy petition creates an estate, which includes "'all legal and equitable interests of the debtor in property at the commencement of the case,'" including any causes of action. Cusano v. Klein, 264 F.3d 936, 945 (9th Cir. 2001) (quoting 11 U.S.C. § 541(a)). The estate includes any causes of action that arise in the period between the filing of the petition and the final discharge. See In re Kottmeier, 240 B.R. 440, 442 (M.D. Fla. 1999); see also Vertkin v. Wells Fargo Home Mortgage, 2010 WL 3619798 at *2 (N.D. Cal. 2010) (if asset comes into being after petition filed, effect of failure to file amended schedule listing asset precludes debtor from later claiming it has been abandoned by trustee in favor of debtor). Because the bankruptcy trustee has the exclusive right to sue on behalf of the estate, the debtor loses the capacity to sue in his own name unless the trustee abandons the claim. See Estate of Spirtos v. One San Bernardino County Superior Court Case, 443 F.3d 1172, 1175 (9th Cir. 2006). Although a trustee may abandon "worthless or low-value assets, including legal claims," there is no abandonment without an affirmative act. See Biesek v. Soo Line Railroad Company, 440 F.3d 410, 413 (7th Cir. 2006). Assets that are neither abandoned nor administered remain the property of the estate even after the case is closed. See In re Lopez, 283 B.R. 22, 28 (9th Cir. BAP 2002); see also In re Pace, 146 B.R. 562, 564–66 (9th Cir. BAP 1992), (unscheduled property remains in estate after case is closed).

Here, because plaintiffs never scheduled the claims raised in the civil action in their bankruptcy proceedings, the claims remained the property of the estate unless abandoned by the trustee. Moreover, even if the claims had been abandoned, plaintiffs would be judicially estopped from bringing them in this civil action. In a similar case, Curry v. Wells Fargo, No. 2:14-cv-01311 TLN CKD PS (E.D. Cal. Sept. 3, 2014), the court found plaintiff's claims barred by the doctrine of judicial estoppel where plaintiff "did not list his claims against defendant as assets in his bankruptcy schedules" even though "the facts and circumstances giving rise to all of his

claims occurred before plaintiff filed his petition for bankruptcy." In that action, the court granted defendant's motion to dismiss.

Plaintiffs' opposition does not meaningfully address the argument that their claims are judicially estopped, but largely argues that the complaint met the Rule 8 pleading requirements. Thus, though defendants alternatively argue that plaintiff's claims are preempted by federal law and that their state law claims are defectively pled, there appears to be no need to reach these issues. Nor does cure by amendment appear viable.

Accordingly, IT IS HEREBY RECOMMENDED THAT:

1. Defendant Wells Fargo's motion to dismiss (ECF No. 6) be granted;

2. Defendants BSI's and Wilmington Savings' motion to dismiss (ECF No. 7) be granted; and

3. This action be closed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: December 19, 2017

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

2 hobbs1920.mtd_fr